UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER L. KOWALEWSKI,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 15-13325

HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## **OPINION AND ORDER**

Plaintiff Jennifer L. Kowalewski ("Plaintiff") brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [Docket #14] IS GRANTED to the extent that the case is remanded for further administrative proceedings, and Defendant's Motion for Summary Judgment [Docket #15] is DENIED.

## **PROCEDURAL HISTORY**

On September 14, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of February 28, 2007 (Tr. 139-151). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on December 19, 2013 in Livonia, Michigan before Administrative Law Judge ("ALJ") Martha M. Gasparovich (Tr. 28).

-1-

Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 32-54), as did Vocational Expert ("VE") Luann Castellana (Tr. 54-61). On February 10, 2014, ALJ Gasparovich found that Plaintiff was not disabled (Tr. 22-23). On August 1, 2015, the Appeals Council denied review (Tr. 1-7). On September 21, 2015, Plaintiff filed for judicial review of the Commissioner's final decision.

## BACKGROUND FACTS

Plaintiff, born January 6, 1973, was 41 when the ALJ issued her decision (Tr. 23, 139). She left school after ninth grade and worked previously as a cashier, dispatcher, and restaurant worker (Tr. 199). She alleges disability resulting from peripheral neuropathy, cysts, a history of strokes, headaches, low back pain, gait problems, and hypertension (Tr. 198).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in Inkster, Michigan (Tr. 33). She left school in the middle of ninth grade after being expelled (Tr. 33). She enrolled in a course to be a medical assistant but did not finish (Tr. 34).

She last worked in 2007, at which time she was working at a fast food restaurant (Tr. 34). She was a "very tolerant person" and did well in "chaotic situations" (Tr. 35). She stopped working due to hypertension caused by the job-related stress (Tr. 35). She was unable to work due to middle to lower back and hip pain (Tr. 35). She took Tramadol for swelling and pain (Tr. 36). She had not undergone physical therapy due to lack of insurance (Tr. 36).

In response to questioning by her attorney, Plaintiff reported that she had lived with a platonic friend for the past 13 years in a single level home (Tr. 37). She received food stamps and was awarded state disability assistance benefits on October 24, 2013 (Tr. 37). Although she now had access to free medical care due to the state disability award, she had not had any insurance before that time (Tr. 37-38). Her back pain had gotten progressively worse since 2007 (Tr. 38). The pain radiated into the lower extremities on occasion (Tr. 39). On a scale of one to ten, she experienced level "seven" pain when taking medication and "eight" when not (Tr. 39). She had been using a cane, both at home and in public, for the past 13 years (Tr. 39).

In 2007, Plaintiff experienced a cerebrovascular accident ("CVA") (stroke) at which time she was hospitalized for three days (Tr. 40). Due to lack of insurance, she did not have the recommended physical therapy but was discharged with a walker (Tr. 41). Since that time, she experienced chronic balance problems (Tr. 41). She also experienced fatty cysts of the hip and spine which caused nerve root impingement (Tr. 41). She used hot packs and medicine to relieve the back pain (Tr. 46). Lying on her side also reduced the back pain (Tr. 46). Due to the back pain, she spent most of the day reclining (Tr. 46).

Independent of the problems caused by the cysts, she experienced lower extremity myopathy which created leg weakness (Tr. 42). She was diagnosed with diabetes in 2011 and currently took Metformin (Tr. 43). She did not experience diabetes complications (Tr. 44). She maintained a normal weight (Tr. 44). She sought emergency treatment in July, 2013 for a migraine headache (Tr. 44). She now took medicine for the migraines and did not experience the headaches more than once or twice a month (Tr. 45). She coped with migraines by going to bed, turning the lights off, putting a rag over her eyes and "rid[ing] it out" (Tr. 45). The migraines typically lasted between two hours and "half the day" (Tr. 45).

She currently took medicine for hypertension (Tr. 47).

Plaintiff was typically unable to sit for more than 30 minutes without experiencing back spasms (Tr. 47). Even with the use of a cane, she was unable to walk more than two blocks (Tr. 47). She could stand for up to 30 minutes, so long as she was able to "lean over" to take pressure off her back (Tr. 48). She was unable to lift more than 15 pounds on an occasional basis (Tr. 48). She was able to reach overhead, provided that she was in a sitting position (Tr. 49). She used alcohol on a rare basis and had not used marijuana in the past 10 years (Tr. 50-51).

### B.     Medical Evidence

#### 1.     Treating Sources

A May, 2006 CT of the head was unremarkable (Tr. 470). An August, 2006 echocardiogram was also unremarkable (Tr. 469). An electroencephalogram, taken in response to Plaintiff's report of "falling and generalized weakness," yielded abnormal results due to "slowing" in the bihemispheric area which could be "secondary to seizure" (Tr. 467, 759). Imaging studies of the cervical spine were normal (Tr. 468).

In August, 2006, Plaintiff was diagnosed with a CVA after experiencing left side numbness (Tr. 434). A February, 2007 chest x-ray was unremarkable (Tr. 464). Imaging studies of the lumbar spine showed spondylolysis (Tr. 464). September, 2008 emergency records state that Plaintiff was legally intoxicated (Tr. 626). A CT of the head was unremarkable (Tr. 463). January, 2010 imaging studies taken after a fall resulting from intoxication were mostly unremarkable (Tr. 413, 426, 454-457) except for a CT of the lumbar spine showing moderate disc protrusion at L4-L5 creating mild effacement of the thecal sac (Tr. 453). She was diagnosed with a concussion and acute alcohol intoxication (Tr. 423).

In July, 2010, Plaintiff sought emergency treatment for a knee injury (Tr. 243, 401). Her gait appeared "steady" while using crutches (Tr. 244). She reported occasional alcohol use (Tr. 242). Treating notes state that she was "obvious[ly] intoxicated" and did not exhibit any signs of knee injury (Tr. 245, 603). She was diagnosed with acute alcohol intoxication (Tr. 249, 603). An October, 2010 CT of the head was unremarkable (Tr. 451). An echocardiogram showed normal results (Tr. 448). Plaintiff reported facial numbness (Tr. 390). Range of motion studies were unremarkable (Tr. 390). She was again diagnosed with acute alcohol intoxication (Tr. 382, 385, 399). She admitted to marijuana use two days earlier (Tr. 381-382). A December, 2010 CT of the abdomen was unremarkable (Tr. 460). Plaintiff was administered Heparin after the discovery of a thromboplastin (Tr. 620).

In January, 2011, Asha Dayana, M.D. noted that Plaintiff's migraines were under good control with medication (Tr. 690). She also noted the conditions of anxiety and depression and episodes of binge drinking (Tr. 690). In February, 2011, David Fitch, D.O. examined Plaintiff, opining that the fatty cysts did not contribute to the back problems (Tr. 676, 702-703). He prescribed a back brace and core strengthening exercises (Tr. 677). His April, 2011 records note that Plaintiff experienced difficulty standing upright and used a cane (Tr. 679). He prescribed Ibuprofen 800 thrice daily (Tr. 679). An MRI from the same month showed a mild disc bulge at L4-L5 and mild abnormalities at L5-S1 (Tr. 731). Other imaging studies showed a pars defect at L-5 (Tr. 730). The following month, Dr. Fitch noted that Plaintiff's insurance did not cover physical therapy (Tr. 709). Plaintiff demonstrated good lower extremity strength (Tr. 708). He noted Plaintiff's statement that she had difficulty finding work because no one was "interested" in hiring someone who used a cane (Tr. 708). He noted that the lumbar MRI was unchanged from a 2000 imaging study (Tr. 708). In August, 2011, Dr. Dayana noted that Plaintiff's medical plan did not cover physical therapy

and that Plaintiff was frustrated and "tearful" (Tr. 693). Dr. Dayana noted "difuse atrophy" of the lower extremities (Tr. 693). In October, 2008, Dr. Dayana noted Plaintiff claim that she was unable to walk without a cane (Tr. 697). December, 2011 records note an unsteady gait (Tr. 320, 333).

A February, 2012 ultrasound of the abdomen was unremarkable (Tr. 441-442). Records from the following month state that the diabetes was stable (Tr. 699). A May, 2012 chest x-ray was unremarkable (Tr. 439). Plaintiff exhibited a normal range of motion (Tr. 280-281). The following month, imaging studies of the left shoulder taken after a fall showed mild arthritis but no other abnormalities (Tr. 270, 277, 438). Treating records state that Plaintiff ambulated with a cane (Tr. 274). In July, 2012, imaging studies of the cervical spine showed normal results (Tr. 438). In August, 2012, Plaintiff sought emergency treatment for anxiety (Tr. 357). Plaintiff reported that due to gait problems, she required the use of a cane (Tr. 355). In September, 2012, pharmacist Dr. Stephen M. Zawisza recommended an award of disability benefits, noting that he had filled Plaintiff's prescriptions for pain, anxiety, hypertension, allergies, spasms, blood thinners, and asthma, and that he had "known her to be a person of integrity" (Tr. 259). Notes from the same month state that the migraine headaches were under good control (Tr. 710).

In January, 2013 Dr. Danya found that Plaintiff was unable to work due to lower extremity muscle atrophy, neuropathy, and balance problems (Tr. 672, 674, 746). Notes from the same month state that Plaintiff was currently in a monogamous relationship (Tr. 716). In March, 2013, Dr. Danya completed a residual functional capacity assessment, finding that Plaintiff experienced the conditions of back pain, muscle weakness, unsteady gait, anxiety, and depression (Tr. 681). She found that Plaintiff was limited to lifting 10 pounds on a rare basis (Tr. 681). She found that in an eight-hour workday, Plaintiff was unable to walk for

more than 30 minutes or sit for more than two hours (Tr. 682). She found that Plaintiff would require a 30-minute rest period every half hour and that the physical conditions would result in more than four absences each month (Tr. 682). She precluded all stooping, crouching, and climbing but found that Plaintiff could twist on a rare basis (Tr. 683). She found that Plaintiff would experience constant problems concentrating (Tr. 683). She noted that Plaintiff was unable to walk without a cane (Tr. 685). Treating notes from the following month state that Plaintiff abstained from all alcohol use but experienced uncontrolled diabetes (Tr. 720-721). In July, 2013, Plaintiff sought emergency treatment for a migraine headache (Tr. 749). She exhibited a normal range of motion and a normal affect (Tr. 750).

On October 24, 2013 the Department of Health and Human Services for the State of Michigan found that Plaintiff was disabled due to eye problems, lower extremity atrophy, and the need for a cane (Tr. 741-743).

### 2. Non-Treating Sources

In November, 2012, Terrance A. Mills, Ph.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of a history of strokes as recently as October, 2010 and current balance problems (Tr. 660). Plaintiff alleged a history of physical abuse and legal problems (Tr. 660). She alleged short-term memory problems (Tr. 661). Dr. Mills observed that Plaintiff's speech was tangential but that she was easily redirected (Tr. 661). She appeared fully oriented (Tr. 661). She alleged eye problems (Tr. 662). Dr. Mills found that Plaintiff required mental health treatment and recommended a consultative examination by a neurologist (Tr. 662). He assigned her a GAF of 45[1] with a guarded prognosis (Tr. 662).

---

[1] A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)("*DSM-IV-TR*"), 34.

The same day, Amjad Shidyad, M.D. performed a physical examination on behalf of the SSA, noting Plaintiff's report of left leg weakness, lower extremity neuropathy, and the need to use a cane (Tr. 664). As a result of past strokes, she did not sleep well (Tr. 664). She also alleged lumbar spine pain due to cysts and migraine headaches (Tr. 664). She denied current alcohol use (Tr. 665). Dr. Shidyad noted that Plaintiff walked slowly without a cane but a little faster with the use of a cane (Tr. 666). He found that Plaintiff required the use of a cane for balance and to relieve pain (Tr. 668). He found reduced muscle strength in the left leg (Tr. 668). Range of motion testing was unremarkable (Tr. 669-670).

The same month, Jerry Csokasy, Ph.D. performed a non-examining review of the psychological findings on behalf of the SSA, finding that Plaintiff experienced mild restriction in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 68). He found that Plaintiff was capable of "simple/routine tasks on a sustained basis" (Tr. 69). The same month, Quan Nguyen, M.D. performed a non-examining review of the physical records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push and pull without limitation (Tr. 70-71). He found that Plaintiff could balance, stoop, crawl and climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; and perform unlimited kneeling (Tr. 71). He concluded that Plaintiff could perform a range of exertionally light work (Tr. 71-72). Psychologist Jerry Csokasy, Ph.D. found that Plaintiff experienced moderate concentrational limitations but no significant limitations in social functioning or adaptation (Tr. 72-73).

### 3. Evidence Submitted After the ALJ's February 10, 2014 Decision[2]

An August, 2006 electroencephalogram showed abnormal results due to "slowing" in the bihemispheric area "secondary" to a possibly seizure (Tr. 759).

### C. Vocational Expert Testimony

VE Castellana classified Plaintiff's previous work as a fast food worker as unskilled and exertionally light; cashier, semiskilled/light; and dispatcher, semiskilled/sedentary[3] (Tr. 54). The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and work experience:

> Assume an inability to stand and walk no more than six hours in an eight-hour day. There would be a need for a cane for ambulation. The individual could lift no more than 20 pounds occasionally and 10 pounds frequently, would be unable to push or pull with the left lower extremity. Could only climb, balance, bend, or stoop occasionally. Could never squat, crawl, or kneel, and should not require the use of depth perception. Could not require fine, close work, such as a barber, machinist, or needle worker, and would need to avoid operating vehicles or moving machinery and unprotected heights. And there could be no prolonged visual vigilance. Would there be any jobs that exist in the national economy such an individual could perform? (Tr. 51).

The VE testified that the above restrictions would not preclude the light, unskilled jobs of inspector/sorter (2,000 jobs in the regional economy); bagger (2,000); and sales counter clerk (4,000) (Tr. 56). The VE testified that if the same individual were limited to

---

[2] This evidence is wholly duplicative of records included in the transcript reviewed by the ALJ (Tr. 466-467).

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

two hours of walking each work period and needed a sit/stand option, she could perform the sedentary work of an inspect (1,000); packager (1,000); and telephone order clerk (1,200) (Tr. 56). The ALJ posed some additional restrictions:

> "simple, routine, one to three step tasks, in a low stress environment, defined as no quick decision making and no quick judgment required on the job [and] no interaction with the public, and only occasional interaction with coworkers . . . [a]nd the individual would be unable to perform jobs that are fast paced, high production, or frequent changes in tasks, expectations, or locations," (Tr. 57-58).

In response, the VE testified that the counter clerk and order clerk positions would be eliminated (Tr. 57-58). The VE testified that if the same individual were interrupted by psychological symptoms up to one-third of the workday at which time she would require redirection, or, required unscheduled breaks of up to 45 minutes, all full-time, competitive work would be eliminated (Tr. 58). The VE stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*"), except for the testimony regarding the sit/stand option and unscheduled breaks which was based on her own professional experience (Tr. 58).

In response to questioning by Plaintiff's attorney, the VE testified that if the above-described individual required the use of a cane at all times while standing, all of the light and sedentary positions listed above would be eliminated (Tr. 59). Alternatively, the VE testified that if the same individual were limited to occasional twisting of the torso, it "would probably make it difficult to perform" light work but "could still restrict a certain level of production and maintaining a certain pace" of the sedentary jobs (Tr. 61).

**D. The ALJ's Decision**

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "bilateral L5 spondylosis; degenerative disc disease; depressive disorder, NOS; possible cognitive disorder; peripheral neuropathy, left leg; obesity; myofascial pain; myopathy and atrophy of the lower extremities; low visual acuity in the left eye; blindness in the right eye; and anxiety/panic disorder," but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16). She found that the conditions of "migraines, diabetes, lipoma, and hypertension" did not cause more than minimal work related limitations (Tr. 15). She found that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 16-17).

The ALJ found further that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work within the following parameters:

> [S]he has the ability to stand and/or walk no more than two hours in an eight-hour day and she would need a sit/stand option and a cane for ambulation; no lifting more than 20 pounds occasionally and 10 pounds frequently; no pushing or pulling with the left lower extremity; occasional climbing, balancing, bending, and stooping; no squatting, crawling, or kneeling; no work that requires use of depth perception; no find close work such as barber, machinist, or needle worker; she should avoid operating vehicles, moving machinery, and unprotected heights; no prolonged visual vigilance; simple, unskilled work with one to three-step tasks; no quick decision making required on the job; no interaction with the public; occasional interaction with coworkers and supervisors; no fast paced high production work; and work without frequent changes in task expectations or locations (Tr. 17).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the sedentary jobs of inspector or packager (Tr. 22).

The ALJ discounted Plaintiff's allegations of disability (Tr. 18-222). She noted that a number of the emergency treating records created since the alleged onset of disability showed "altered mentation, loss of balance, and loss of consciousness that were found to stem from acute intoxication or alcohol withdrawal (Tr. 18). The ALJ noted that the hospital records also referenced marijuana use (Tr. 18). She noted further that Plaintiff did not follow up with recommendations for physical therapy despite the intervention of a social worker (Tr. 19). She cited Drs. Gayana and Shidyad's findings what Plaintiff was able to walk with an assistive device (Tr. 19). She noted that Plaintiff's treatment had been exclusively conservative and that she was able to do household chores, manage her finances, and crochet (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes four arguments for remand. First, she faults the ALJ for declining to accord controlling weight to Dr. Dayana's disability opinion. *Plaintiff's Brief,* 14-17, *Docket #14,* Pg ID 818. Second, she contends that the ALJ erred by failing to consider the need for a cane when crafting the RFC. *Id.* at 17-19. Third, she argues that the credibility determination was based on the erroneous finding that she declined to pursue available

physical therapy when in fact, her insurance plan did not cover such therapy. *Id.* at 19-21. Last, she contends that the ALJ erred by failing to accord any weight to a State of Michigan disability finding. *Id.* at 22.

Because the second and fourth arguments are related, arguments three and four will be considered in reverse order.

### A. The Treating Physician Analysis

Plaintiff is correct that "[i]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544. The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013).

The ALJ provided an adequate rationale for according only "little weight" to Dr. Dayana's multiple findings of disability, correctly noting that the ultimate issue of disability was reserved for the Commissioner (Tr. 21); *see* 20 C.F.R. § 416.927(e). The ALJ noted

that Dr. Dayana's finding that Plaintiff was unable to walk was contracted by Dr. Dayana's own treating records (Tr. 19). The ALJ cited Dr. Dayana's records stating that Plaintiff requested a disability opinion because attempts to procure work had been unsuccessful (Tr. 21). While Plaintiff argues that Dr. Dayana's opinion is supported by a finding of bilateral cysts and a moderate disc protrusion at L4-L5, another treating source found that the cysts did not contribute to the back problems (Tr. 676). Despite evidence of a moderate disc bulge, treating records from the same period show good lower extremity strength (Tr. 708). Because the ALJ's rejection of Dr. Dayana's findings is well explained and well supported, a remand on this basis is not warranted.

### B. The Use of a Cane

In contrast, a question remains as to whether Plaintiff's use of a cane would interfere with the performance of even sedentary work with a sit/stand option[4] (Tr. 17, 19-20). The RFC limited Plaintiff to work that required "a cane for ambulation" (Tr. 17). The ALJ found that the need to walk with a cane and the need for a sit/stand option were supported by the treating observations of lower extremity atrophy (Tr. 19-20). However, the ALJ did not address Plaintiff's alleged need for a cane while standing, despite her testimony that she needed to "lean over" while standing to take the pressure off her back (Tr. 48). The question of whether she required a cane for standing is particularly critical, given the VE's testimony that the need to grip a cane while working in a standing position (added to the limitations of sedentary, unskilled work) would preclude all work (Tr. 59). It is well established that the need to work "one-handed" while in the standing position significantly erodes the sedentary job base. SSR 96-9p, 1996 WL 374185,*7 (June 2, 1996)("occupational base for an

---

[4]While the ALJ found that Plaintiff was limited to sedentary work, the lifting requirements in the RFC describe exertionally light work (Tr. 17); § 404.1567(a-b).

individual who must use such a device for balance because of significant involvement of both lower extremities . . . may be significantly eroded"). Although Plaintiff does not allege manipulative limitations, the inability to use both hands due to the cane use also impacts the job findings. *Id.* at *8 ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base")(emphasis omitted). Because the question of whether Plaintiff requires the use of a cane while performing her job in a standing position is unresolved, a remand for further proceedings is appropriate.

### C. The State Disability Determination (Argument Four)

For overlapping reasons, the ALJ's accord of only "little weight" to the state disability finding requires a remand for further fact-finding. Under SSR 06–03p, "evidence of a disability decision by another governmental or non-governmental agency cannot be ignored and must be considered." 2006 WL 2329939, *6 (August 9, 2006). Although the ALJ is not required to adopt the findings of other agencies, s/he "should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." *Id.*

The ALJ addressed the state disability finding, noting that "a prior [state] denial was [found to be] incorrect due to a lack of vocational evidence" (Tr. 21 *citing* 741-743). The ALJ contrasted the state case to the current one by noting that "[i]n the instant proceeding, the Commissioner has provided vocational evidence which supports her decision" and hence, "[t]he State opinion is therefore inconsistent with the current evidence" (Tr. 21). In other words, the ALJ justified the rejection of the state opinion because it was not supported by vocational testimony, but the current case was.

However, as discussed above, a question remains as to whether the hypothetical question forming the basis of the RFC ought to have included Plaintiff's need for a cane while performing work in the standing position. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). While the ALJ bases his rejection of the state determination on the "vocational evidence" in the present case, it is unclear whether the hypothetical limitations forming the basis of the RFC reflect Plaintiff's full degree of limitation. The ALJ's basis for rejecting the state determination founders on her reliance on vocational testimony given in response to a possibly inadequate set of hypothetical limitations. As such, a remand is warranted on this basis as well.

### D. The Credibility Determination (Argument Three)

Plaintiff also faults the determination that her claims were not credible because she did not pursue physical therapy. *Plaintiff's Brief* at 19. She argues further that her testimony that she had a stroke in 2010 (when in fact the claim was unsupported by the treating record) was based on her own limited understanding of her condition. *Id.* at 20. She also faults the ALJ for finding that her claims were undermined by substance abuse. *Id.*

The ALJ noted that the claims of a 2010 stroke were defeated by evidence showing that the "stroke-like" symptoms were attributable to "acute intoxication" (Tr. 18). In this context, the ALJ does not appear to fault Plaintiff for claiming a non-existent stroke, but rather, pointing out that her "symptoms" were attributable to her alcohol abuse rather than a medical condition (Tr. 18). The ALJ acknowledged Plaintiff's testimony that she showed up for physical therapy but was turned away but noted that there were "no notes in the file

to corroborate this statement" (Tr. 19). The ALJ accurately noted that while Plaintiff was referred to a social worker who informed her that she was covered for physical therapy in August, 2011, none of the followup treatment notes make reference to attempts to follow through with therapy (Tr. 19 *citing* 694). The ALJ reasoned that even assuming that Plaintiff was turned away from physical therapy, her failure to make followup requests to her treating sources for resolution of the issue undermined her claim of disabling symptoms (Tr. 19). She noted Plaintiff's failure to obtain appropriate treatment was due to her own lack of persistence rather than financial limitations (Tr. 19). Moreover, the ALJ did not err in noting that Plaintiff's report to Dr. Dayana that she needed a disability opinion because she could not find work supported the conclusion that she was stymied by the inability to *find* rather than perform a job (Tr. 21).

As such, aside from the above-discussed erroneous findings requiring further administrative proceedings, the customary deference accorded an ALJ's credibility determination is appropriate here. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. CSS,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

While a remand to the administrative level is warranted for the above-discussed reasons, I decline to recommend a remand for an award of benefits. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir.1994). In this case, a remand for benefits prior to the resolution of the unresolved factual issues would be premature. As such, I recommend a remand for further administrative proceedings consistent with this Opinion.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Docket #14] is GRANTED to the extent that the case is remanded for further administrative proceedings and Defendant's Motion for Summary Judgment [Docket #15] is DENIED.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 14, 2017

## CERTIFICATE OF SERVICE

I hereby certify on March 14, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen